UNITED STATES of America, Plaintiff,

v.

Styles TAYLOR and Keon Thomas, Defendants.

No. 2:01–CR–0073–AS.

United States District Court, N.D. Indiana, Hammond Division at Southbend.

April 16, 2004.

Phil Benson, Hammond, IN, for Plaintiff/Petitioner.

David Vandercoy, Valparaiso, Ihor Alexander Woloshansky, Merrillville, IN, John E. Martin, Hammond, IN, for defendant Taylor.

Keith A. Spielfogel, Scott J. Frankel, Chicago, IL, for defendant Thomas.

## *ORDER*

SHARP, District Judge.

This matter is before the Court on the Government's Request for Venue Determination Pursuant to 18 U.S.C. 3235 and Fed.R.Crim.Pro. 18 [DE 600]; Defendants' Joint Response to the Court's Order of March 31, 2004 and the "Government's Request for Venue Determination Pursuant to 18 U.S.C. 3235 and Fed.R.Crim.Pro 18 [DE 611]; and the Government's Response to the Court's Order Regarding The Constitutional Implications of 18 U.S.C. § 3235 [DE 612]".

## *BACKGROUND*

Defendants Thomas and Taylor are charged with various violations of federal law concerning a robbery and murder at the Firearms Unlimited Gun Shop located in Hammond, Indiana. Specifically, Taylor and Thomas are charged with conspiracy to commit robbery of a federally licensed firearms store and murder in violation of 18 U.S.C. §§ 1951 and 2 (Count 1); armed robbery in violation of 18 U.S.C. §§ 1951 and 2 (Count 2); the murder of Frank Freund in violation of 18 U.S.C. §§ 924(j), 924(c)(1) and 1951 and 2 (Count 3); and felon in possession of a firearm in violation of 18 U.S.C. §§ 922(g)(1), 924(a)(2) and 2 (Counts 4, 5 and 6) [1].

This matter originated in the Hammond Division and was re-assigned to the undersigned in the South Bend Division on June 24, 2003. Prior to the re-assignment, this case was assigned to Judge Moody. The re-assignment was necessitated after Judge Moody took senior status and due to the fact that the remaining district judges in the Hammond Division were unavailable.[2] Therefore, pursuant to Local Rule 40.1(f),[3] and in the interest of the expeditious administration of justice, Chief Judge Miller reassigned this case to the undersigned. (DE 376).

On March 26, 2004, the Government filed a Request for Venue Determination Pursuant to 18 U.S.C. § 3235 and Fed. R.Crim. P. 18. The Government requested that the Court make an informed ruling regarding the proper venue in this case. Specifically, the Government brought to the Court's attention Section 3235 in order for the Court to determine whether venue is proper in the South Bend Division or whether the case must be heard in the Hammond Division due to the fact that the offense punishable by death was committed in Hammond. In its motion, the Government notes that it has brought this issue to the Court's attention since neither Defendant has raised this statutory provision in their briefs regarding the question of utilizing a combined jury pool from the Hammond and South Bend Divisions. In fact, at no time since the reassignment of this case to the South Bend Division has either Defendant challenged the transfer or filed a motion requesting a change of venue from the South Bend Division.

---

1. Defendant Taylor is charged in Count 4 of felon in possession of a firearm, whereas Defendant Thomas is charged as a felon in possession in Counts 5 and 6.

2. Judge Lozano was unavailable due to the fact that he is assigned a federal capital case which is scheduled to go to trial in May, 2004, which conflicts with the trial schedule of this case. Additionally, Judge Lozano's criminal docket would have been unduly burdened by having two concurrent capital murder cases.

Judge Simon was disqualified from the assignment of this case as a result of his supervisory position within the United States Attorney's office prior to being appointed to the federal bench.

3. Local Rule 40.1(f) provides:

"When required by considerations of workload, in the interest of the expeditious administration of justice, the court by order may reassign cases among judges or magistrate judges."

Due to the fact that the Government raised this issue so close to the trial, the Court immediately issued an Order requiring all parties to brief the issue of the constitutional implications of 18 U.S.C. § 3235 to the case at bar. Specifically, whether Defendants have a constitutional or statutory right to have the trial conducted in the Hammond Division. The Court now addresses the parties' responses to that Order and the Government's initial request for venue determination.

**Venue Determination Pursuant to 18 U.S.C. § 3235 and Fed. R.Crim. Pro. 18**

The Government has requested that the Court make a determination of proper venue in this case. The provisions at issue are the following:

*18 U.S.C. § 3235—"Venue in Capital Cases"*:

"The trial of offenses punishable with death shall be held in the *county* where the offense was committed, where that can be done without great inconvenience." (emphasis added).

*Fed.R.Crim.Pro. 18—"Place of Prosecution and Trial"*:

"Unless a statute or these rules permit otherwise, the government must prosecute an offense in a *district* where the offenses was committed. The court must set the place of the trial within the district with due regard for the convenience of the defendant and the witnesses, and the prompt administration of justice." (emphasis added).[4]

*Amendment VI. to the Constitution of the United States:*

"In all criminal prosecutions, the accused shall enjoy the right to a speedy and public trial, by an impartial jury of the State and district wherein the crime shall have been committed...."

■ In the non-capital criminal prosecution context, it is well-settled that the venue provision of the Sixth Amendment provides only for trial in the district where the crime has been committed—there is no reference to a division within the judicial district. *United States v. James*, 528 F.2d 999, 1021 (5th Cir.1976). Similarly, Rule 18 of the Federal Rules of Criminal Procedure provides that the trial shall be held in the district where the offense was committed. Pursuant to Rule 18, the district court is authorized to take into consideration the convenience of the defendant and the witnesses as well as the prompt administration of justice in determining the location of the trial within the district. *United States v. Reynolds*, 64 F.3d 292, 296 (7th Cir.1995) *cert. denied*, 516 U.S. 1138, 116 S.Ct. 969, 133 L.Ed.2d 890 (1996)(finding that defendant does not have a constitutional right to a trial within a certain division of the district); *United States v. Knop*, 701 F.2d 670, 675 (7th Cir.1983)(the division of a federal judicial district is not a unit of venue in a criminal case.") In sum, a defendant does not have a constitutional or a statutory right to be tried in a specific division within a district as long as the trial takes place in the district where the offense took place. *Humphrey v. United States*, 896 F.2d 1066, 1068 (7th Cir.1990)("[f]ederal defendants are often

---

**4.** A 1966 amendment of F.R.Crim.P. 18 deleted a provision reading, "but if the district consists of two or more divisions the trial shall be had in a division in which the offense was committed." *United States v. Lewis*, 504 F.2d 92, 97 (6th Cir.1974), *cert. denied*, 421 U.S. 975, 95 S.Ct. 1974, 44 L.Ed.2d 466 (1975). By eliminating the condition of division venue, the 1966 amendment "recognized that the presence of venue at a particular place is controlled by numerous factors, e.g., proximity of defendant's residence, proximity of witnesses and counsel, docket conditions which bear on whether a defendant receives a speedy trial, and proximity of records and documents, and should not be hemmed in by artificial boundary lines drawn by Congress." *Id.*

tried in a venue at some distance from the location of the underlying offense....[y]et as long as the trial takes place within the district in which the offense took place, no error occurs.")[5]

■ Review of the pertinent case law reveals that a district court's decision regarding venue will be upheld on review unless there is a clear abuse of discretion. In fact, an exhaustive survey of case law pertaining to Rule 18 and the Sixth Amendment's venue mandate, finds only one case in which a district court's denial of a motion to change venue within a district was reversed. *See United States v. Fernandez*, 480 F.2d 726 (2nd Cir.1973). In *Fernandez*, the Second Circuit reversed the district court's denial of motion for change of venue from one county to the another in the district. The Court observed that the "only person convenienced by trial at Westbury was the judge," and

that "holding a criminal trial, over the objection of the defendant, in a place removed from the court's headquarters, having no relation to the place of the crime, and for no apparent reason other than the convenience of the judge may lead to the appearance of abuses." *Id.* at 730–731. The Court could not find the "slightest indication of why 'interest of justice' required that the trial be held in Westbury," and therefore reversed the district court's denial of defendant's motion to change venue. *Id.* A clear distinction can be drawn from the facts found in *Fernandez* from those at issue in the case at bar since the transfer of this matter from the Hammond Division to South Bend was done in the interest of expeditious administration of justice and necessitated by the fact that there were no available district judges to try this complex case[6].

5. In addition to the Seventh Circuit, numerous other courts have applied this long-standing rule regarding venue. *See Zicarelli v. Gray*, 543 F.2d 466, 481–482 (3rd Cir. 1976)("[w]hen a federal judicial district has been carved into divisions, the accused has no right to a trial held in a particular division, even one where the crime occurred ... the constitutional guarantee is written in terms of districts"); *United States v. Lewis*, 504 F.2d 92, 97–98 (6th Cir.1974)("[t]he assignment of cases within a district is a matter within the exclusive domain of the local district judges.... [t]ransfer of a particular case from one place within the district to another place within the district is a matter for the local district judges to decide, and the assent of a defendant to such a transfer is not required"); *United States v. Florence*, 456 F.2d 46 (4th Cir.1972)(defendant did not have a constitutional nor a statutory right to a district wide jury, nor to a jury selected from a specific division, nor to venue in a certain division. Court did not abuse its discretion when it denied defendant's motion to transfer from one division to another within the same district where trial occurred in neighboring division from where defendant resided and offense was committed.); *United States v. Addonizio*, 451 F.2d 49, 61–62 (3rd Cir.1971),

cert. *denied*, 405 U.S. 936, 92 S.Ct. 949, 30 L.Ed.2d 812 (1972)(affirming the district court's decision of venue as a proper exercise of discretion and finding that the court's determination did not evince a lack of due regard since, on balance, other factors outweighed the consideration of convenience); *Houston v. United States*, 419 F.2d 30, 33 (5th Cir.1969)("Rule 18 does not encompass an absolute right on the part of the [defendant] to be tried in a division of his choice but is a discretionary power of the Court to be exercised upon a showing of good cause"); *Bostick v. United States*, 400 F.2d 449, 452 (5th Cir.1968), cert. *denied*, 393 U.S. 1068, 89 S.Ct. 725, 21 L.Ed.2d 712 (1969)("[the division] is an administrative unit in those districts which are subdivided by law into divisions....[t]he division has no constitutional significance; the vicinage is the district.")

6. The reassignment of this case to the South Bend Division was further necessitated in light of the fact that at the time of the reassignment, due to construction at the Hammond Federal Building, there were no additional courtrooms available in which a visiting judge could try this case which is expected to be tried over a 8–week period.

Moreover, the mere fact that the convenience of the judge factors into the determination of venue is not dispositive in and of itself. For example, in *United States v. Truglio*, a district judge's decision to hold trial in a county other than the county where the offense was committed and where all defendants, their witnesses and three of four defense counsel resided was upheld as "an exercise of sound discretion of the district judge." 731 F.2d 1123, 1130 (4th Cir.1984), *overruled on other grounds by United States v. Burgos*, 94 F.3d 849 (4th Cir.1996), *cert. denied*, 519 U.S. 1151, 117 S.Ct. 1087, 137 L.Ed.2d 221 (1997). In *Truglio*, the district judge's denial of defendant's motion to change venue was based on the fact that he had not yet set up offices in the county in which the defendant wanted the trial to occur. *Id.* While the Fourth Circuit was "not untroubled by the district court's decision," it refused to disturb the district court's ruling after finding that although the considerations arose from the predicament of the judge there were other concerns that reached beyond the mere convenience of the judge and implicated fundamental interests of justice.[7] *Id.*

■ Notwithstanding the analysis thus far, the determination of whether the Defendants *must* be tried in the Hammond Division hinges on whether the Defendants exercise their statutory right to have their trial in the county where the offense was committed and whether the trial can be conducted there without "great inconvenience."

■ Section 3235 does not vest a defendant with an absolute right to a trial within the county where the offense was committed. *Brown v. United States*, 257 F. 46, 48 (5th Cir.1919), *cert. granted and reversed on other grounds by* 256 U.S. 335, 41 S.Ct. 501, 65 L.Ed. 961 (1921). Rather, the defendant has only a qualified right in cases where such a trial can be held "without great inconvenience." *Id.* "The District Court is vested with discretion in making this determination. Nothing less than an abuse of discretion would justify an interference." *Id.* (finding that trial court's determination that trial could not be held in county where offense was committed without great inconvenience did not demonstrate an abuse of discretion); *see also Shockley v. United States*, 166 F.2d 704, 709 (trial court's denial of change of venue for capital case affirmed considering "an application of this character is addressed to the sound discretion of the trial court.")

In terms of determining whether there is a "great inconvenience," at least one court concluded that it is the inconvenience to the government that must be measured. *See United States v. Parker*, 103 F.2d 857, 861 (3rd Cir.1939). In *Parker*, the defendants petitioned the court for a transfer of venue from one county to the county in which the offense was committed. *Id.* The Government objected on the grounds that it would be inconvenienced since a large number of its witnesses were located in the county that the trial was set. The trial court denied the defendants' motion. On review, the Third Circuit determined that

---

**7.** In finding that there were fundamental interest of justice implicated in the district court's decision regarding venue, the *Truglio* court explained that "had the district judge attempted to hold the trial in a location in which he lacked the requisite facilities and support staff, his very ability to preside adequately over such a complex trial might have

been jeopardized." *Id.* at 1130. Moreover, the Fourth Circuit noted that the conduct of other matters pending before the court and requiring attention during the same time span as the trial might have suffered if the judge were compelled to function in an unestablished office location. *Id.*

the court's discretion had not been abused. Moreover, the reviewing court inferred that the "inconvenience referred to in the statute is that of the Government since the [defendants] could hardly complain of being tried at the place where their offense was committed.[8]" *Id.* While the *Parker* court's reasoning regarding the lack of standing a defendant has to complain about being tried in a county where the offense was committed is sound, it does not necessarily foreclose the fact that convenience of the court[9] must also be taken into consideration. In other words, it is not solely the Government's convenience that must be weighed in determining proper venue for a capital prosecution. In fact, the Government has failed thus far to cite any case law that holds that the term "great inconvenience" refers exclusively to the Government.

■ Furthermore, as the Government points out, Section 3235 vests a statutory right with the *Defendants*, not the Government, to either exercise or waive. Prior to the Government raising the issue of Section 3235, neither Defendant had raised this statutory provision in an effort to move the trial to the Hammond Division. Moreover, even since the Government raised the issue of the application of Section 3235, neither Defendant has raised an objection to a South Bend trial. In fact, Defendants have advised the Court in their Joint Response that they are prepared to try this case in South Bend. (Defendants' Jt. Response at 10).

The Court finds that Section 3235 does not require that this case be tried in the Hammond Division due to fact that neither Defendant has raised the statutory provision in an attempt to have the case tried in Hammond—thus, effectively waiving any statutory rights they have under the provision. Furthermore, the Court finds that even if either Defendant had invoked the provision, the circumstances that precipitated the reassignment to the South Bend Division equated to "great inconvenience" and therefore a trial of this matter in South Bend would be proper.

### Defendants' Request for Hammond Division Venire

■ While the Defendants have confirmed that they are prepared to try the case in South Bend, they have requested that the venire be chosen from the Hammond Division. Citing recent census data, Defendants claim that the disparity in the African–American populations between the Hammond and South Bend Divisions[10] requires that the venire be drawn from the Hammond Division in order to ensure that their right to an impartial jury drawn from a fair cross-section of the community is not violated. Defendants, both African–American, point to the disparity in minority populations between the two Divisions, along with the fact that Hammond is where they are from and where the crime occurred as bases for their request for the Court to exercise its discretion and call a venire from the Hammond Division.

8. Despite its ruling that the district court had not abused its discretion in denying defendants' § 3235 motion, the *Parker* court concluded the issue of § 3235 was moot. Due to the fact that the offense defendants were charged with was not, in fact, punishable with death the *Parker* court concluded that § 3235 was inapplicable. *Parker,* 103 F.2d at 861.

9. In this context, the Court is not using the term "convenience" to mean the personal convenience of the Court. Rather, the Court uses the term in a broader sense that takes into consideration constraints such as the availability of a courtroom for a complex trial such as this, the affect this case has on the remaining docket and other workload considerations.

10. Defendants cite census data that suggests that the Hammond Division has an African–American population of 19.6%, whereas the South Bend Division has an African–American population of 6.3%.

The Court finds that the Defendants do not have a right to a Hammond Division jury in the event that this case would be tried in South Bend. First, the Amended Jury Selection Plan of the U.S. District Court of the Northern District of Indiana ("Amended Jury Plan") does not allow for either combined Division venires or calling jurors from one Division for a trial in a separate Division within the District. Second, the Defendants have failed to show that they would be denied their right to an impartial jury selected from a fair cross-section of the community if they are tried by a jury chosen from a South Bend Division venire. The Amended Jury Plan satisfies the Sixth Amendment command that a defendant has a right to be tried by an impartial jury selected from a fair cross-section of the community. Defendants do not have a right to a representative jury, nor do they have the right to have a jury of a particular composition. *United States v. Raszkiewicz,* 169 F.3d 459, 462 (7th Cir.1999); *United States v. Ashley,* 54 F.3d 311, 313 (7th Cir.1995) (The Constitution does not require the juries must be taken from a source that is representative of the community to ensure representative juries, but rather impartial juries).

■ In order to establish a prima facie case that their Sixth Amendment rights to a venire drawn from a fair cross section of the community were violated, Defendants would have to show that (1) the group allegedly excluded is a distinctive part of the community; (2) that the representation of this group in venires from which juries are selected is not fair and reasonable in relation to the number of such persons in the community; and (3) that the under-representation is due to a systematic exclusion of the group in the jury selection process. *Duren v. Missouri,* 439 U.S. 357, 364, 99 S.Ct. 664, 668, 58 L.Ed.2d 579 (1979).

Although the definition of "distinctive group" remains an imprecise concept for which the Supreme Court has not provided a definite formulation, it is undeniable that African–Americans constitute the sort of group contemplated by the "distinctive member of the community" part of the *Duren* test. *Ashley,* 54 F.3d at 313. Next, in order to prove a violation of the Sixth Amendment, the Defendants must show that the distinctive group—in. this case African–Americans—was disproportionately represented in the venire in relation to the group in the community. However, there is no requirement that the venire mirror the general population. *United States v. Duff,* 76 F.3d 122, 125 (7th Cir.1996), *cert. denied,* 519 U.S. 853, 117 S.Ct. 148, 136 L.Ed.2d 94 (1996). Furthermore, the Defendants must also demonstrate that the absence of the distinctive group in the venire arises from something more than mere coincidence or a sampling anomaly. *United States v. Cooke,* 110 F.3d 1288, 1301 (7th Cir.1997). While statistical disparity may be used to demonstrate under-representation, the Seventh Circuit has held that "a discrepancy of less than ten percent alone is not enough to demonstrate unfair or unreasonable representation of [African–Americans] on the venire. *Ashley,* 54 F.3d at 314. Moreover, even if the Defendants could prove an under-representation, no Sixth Amendment violation arises unless they can show 'systematic' exclusion." *United States v. McAnderson,* 914 F.2d 934, 941 (7th Cir. 1990), *cert. denied,* 513 U.S. 953, 115 S.Ct. 372, 130 L.Ed.2d 323 (1994). The Seventh Circuit has frequently found no systematic exclusion whenever, as in this District, the venire is selected from the voter registration lists. *See United States v. Smith,* 223 F.3d 554, 569 (7th Cir.2000); *Ashley,* 54 F.3d at 314.

Based on the foregoing, the Court finds that Defendants do not have a Constitu-

tional right to have a jury selected from a venire called from the Hammond Division in the event that this case is tried in the South Bend Division and thus DENIES the Defendants' Request.

## CONCLUSION

The Court finds that the reassignment of this matter to the South Bend Division was effected in order to manage the criminal docket of the District efficiently and in the interest of the expeditious administration of justice and thus was proper. Furthermore, the Defendants have waived their statutory rights provided in 18 U.S.C. § 3235 to have this case heard in Hammond and have failed to demonstrate a right to have a jury selected from a Hammond Division venire for a trial in South Bend.

However, the above being stated, the Court has determined that this matter will be tried in Hammond with a jury selected from a Hammond Division venire. The Court has come to this decision after finding that the limitations that were present at the time this case was reassigned (i.e., the availability of a courtroom in Hammond with the capacity to accommodate this lengthy and complex trial) has been remedied. Thus, the Court, taking this into consideration—together with the fact that counsel and witnesses are located in and around Hammond—has decided that the trial of this case will take place in Hammond. The undersigned will preside over the trial of this cause commencing on July 6, 2004 with jury selection.

**SO ORDERED.**